## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Noel K. A.,

        Plaintiff,

v.

Andrew M. Saul,[1]
Commissioner of
Social Security,

        Defendant.

Civ. No. 19-1366 (DSD/BRT)


**REPORT AND
RECOMMENDATION**

---

James H. Greeman, Esq., Greeman Toomey, counsel for Plaintiff.

Michael Moss, Esq., and Tracey Wirmani, Esq., Social Security Administration, counsel for Defendant.

---

BECKY R. THORSON, United States Magistrate Judge.

      Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for Social Security disability insurance benefits and supplemental security income. This matter is before the Court on the parties' cross-motions for summary judgment, in accordance with D. Minn. LR 7.2(c)(1). (Doc. Nos. 12, 15.) The matter is referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn.

---

[1]    On June 17, 2019, Andrew M. Saul was sworn in as the Commissioner of Social Security and is substituted as the proper Defendant. *See* Fed. R. Civ. P. 25(d).

L.R. 7.2, 72.1. For the reasons stated below, this Court recommends that Plaintiff's motion be granted in part and denied in part, and Defendant's motion be denied.

## BACKGROUND

Plaintiff is a high-school graduate, is divorced, and has a minor daughter. (Tr. 701–02, 744, 843, 923.)[2] Between 2008 and 2015, Plaintiff worked as an insurance clerk for Tactile Systems Technology, Inc. (Tr. 249–50, 743, 923.) Plaintiff explains that she "had to be out of work each year for six weeks to six months," "was on short term disability for up to 6 months each year due to mental and physical health challenges," "was eventually moved from full-time to a part-time position due to [her] inability to work a full week," and "was finally laid off due to [her] constant need to be out of work, even after being reduced to a part time position." (Tr. 754, 873.) At age thirty-nine, Plaintiff applied for benefits under Title II of the Social Security Act on September 25, 2015, alleging a disability onset date of March 23, 2015. (Tr. 842.)

In a decision dated August 6, 2018, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled within the meaning of the Social Security Act and denied Plaintiff's application. (Tr. 745.) The ALJ proceeded through the five-step evaluation process provided in the Social Security regulations.[3] At issue on this appeal are the ALJ's

---

[2]    Throughout this Order, the abbreviation "Tr." is used to reference the Administrative Record. (Doc. No. 10.)

[3]    *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citation omitted) ("During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment

findings at step two and steps four/five as they relate to Plaintiff's Residual Functional Capacity ("RFC"). At step two, the ALJ found that Plaintiff had the following severe impairments: "migraine headaches; pain disorder; depressive disorder/bipolar disorder; and anxiety disorder." (Tr. 735.) The ALJ then mentioned several impairments that he found to be non-severe (including Plaintiff's chronic low back pain), but did not address Plaintiff's alleged endometriosis.[4] Later in the disability analysis, the ALJ found that Plaintiff had the RFC to perform light work, with the following limitations: "occasional, infrequent, and superficial contacts with the public, coworkers, and supervisors; no work in a job that involves fast pace, such as working at a fast-moving conveyor belt; the individual would need stability in terms of the way the job is performed and the location of the job." (Tr. 738–39.) Key to Plaintiff's arguments on appeal are that the ALJ did not include any limitation for her endometriosis, nor did the ALJ provide a limitation that would address Plaintiff's frequent absenteeism, including the additional absenteeism newly supported by post-hearing evidence relating to Plaintiff's post-hearing car accident and treatment.

At step four, after consulting with a vocational expert, the ALJ found that a person with Plaintiff's RFC was unable to perform any past relevant work. (Tr. 743.) At step five, however, the ALJ concluded that considering a person with Plaintiff's age,

---

prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.").

[4]    Plaintiff argued in her brief to the ALJ that her endometriosis was a severe physical impairment. (Tr. 930.)

education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff can perform, and therefore found Plaintiff not disabled. (Tr. 744–45.)

On appeal, Plaintiff argues that the ALJ's failure to assess her endometriosis as severe or non-severe at step two requires remand for a fuller consideration. She also argues that the ALJ failed to make findings regarding Plaintiff's absenteeism when determining Plaintiff's RFC, and erred when giving little weight to Plaintiff's long-time primary treating therapist Ms. McEwan's opinion,[5] and long-time treating physician Dr. Sethna's opinion.[6] Ms. McEwan opined that in a work setting, Plaintiff would experience marked limitations in interacting appropriately with public, co-workers, and supervisors and marked limitations in responding appropriately to work pressures and changes when cycling between depression or mania. (Tr. 1151.) She also opined that Plaintiff would have poor reliability on a daily basis and poor attendance at a work setting due to multiple medical appointments. (Tr. 1151.) Dr. Sethna opined after the post-hearing car accident that it was unsafe for Plaintiff to drive, that she had an inability

---

[5]     Ms. McEwan treated Plaintiff for twelve years. (Tr. 707.) Ms. McEwan and her colleagues at Associated Clinic of Psychology treated Plaintiff at times multiple times per week throughout the relevant time period for bipolar disorder, anxiety disorder, and a personality disorder. (*See* Tr. 1027, 1031, 1033, 1037, 1039, 1042, 1047, 1049, 1051, 1055, 1058, 1060, 1066, 1069, 1073, 1075, 1078, 1081, 1112, 1121, 1126, 1127, 1130, 1136, 1139, 1142, 1304, 1307, 1313, 1316, 1317, 1321, 1322, 1325, 1328, 1331, 1334, 1337, 1340, 1343, 1346, 1349, 1356–59, 1361, 1363, 1367, 1370, 1373, 1382, 1385, 1387, 1390, 1393, 1395, 1398, 1400, 1403, 1407, 1410, 1413, 1416, 1419.)

[6]     Dr. Sethna treated Plaintiff for eight years. (Tr. 706.)

4

to attend many routine activities of daily living including shopping, cooking, and cleaning, and that any participation in such activities would increase her overall symptoms. (Tr. 1946.) Plaintiff argues that if proper weight is given to these opinions, and in particular with regard to Plaintiff's absenteeism, then, as the vocational expert testified, a person with Plaintiff's limitations would not be able to perform the jobs identified by the ALJ at step five.

## ANALYSIS

### I.   Standard of Review

Congress has established the standards by which Social Security disability insurance benefits may be awarded. The SSA must find a claimant disabled if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's impairments must be "of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). The claimant bears the burden of proving that she is entitled to disability insurance benefits under the Social Security Act. *See* 20 C.F.R. § 404.1512(a). Once the claimant has demonstrated that he cannot perform past work due to a disability, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the [RFC] to do other kinds of work, and, second that other work exists in substantial numbers in the national economy

that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000) (citations omitted).

The Commissioner's decision will be upheld if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted); *accord Lewis v. Barnhart*, 353 F.3d 642, 645 (8th Cir. 2003). This standard "allows for the possibility of drawing two inconsistent conclusions." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations omitted). If it is possible to draw inconsistent conclusions from the record, and one of those conclusions represents the ALJ's findings, the ALJ's decision must be affirmed. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010); *Pearsall v. Massanarri*, 274 F.3d 1211, 1217 (8th Cir. 2001) (stating that the court must affirm even if it would have weighed the evidence differently); *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (concluding substantial evidence in the record supporting a contrary outcome was not enough to warrant reversal).

## II.    Step-Two Argument

At step two, the Social Security Administration considers "the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment must meet a twelve-month durational requirement to be considered severe. *See* 20 C.F.R. § 404.1509; *see also David G. v. Berryhill*, No. 17-cv-3671 (HB), 2018 WL 4572981, at *1, n.2 (D. Minn. Sept. 24, 2018). "An impairment is not severe if it amounts only to a

slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). The claimant bears the burden of establishing that a given impairment is severe. *Id.* at 707–08 (citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)).

Here, the ALJ did not discuss endometriosis as being either severe or non-severe at step two of the evaluation process. Plaintiff argues that this was reversible error. "[S]everal district courts in the Eighth Circuit, including the District of Minnesota, have concluded that an ALJ's failure to find that an impairment is severe at step two is harmless error where the ALJ otherwise finds another severe impairment exists and addresses any functional limitations caused by the overlooked impairment when determining the individual's RFC." *Misty G. v. Berryhill*, No. 18-cv-00587-KMM, 2019 WL 1318355, at *3 (D. Minn. Mar. 22, 2019) (citing cases).[7] But a "step two error cannot be dismissed as harmless if the RFC finding omits the claimant's relevant functional limitations, and a remand would be necessary to correct the analysis." *Misty G.*, 2019 WL 1318355, at *4.

Plaintiff does not identify the specific functional limitation that she believes should have been considered based on Plaintiff's endometriosis, instead stating generally that "[n]o limitations from this impairment are incorporated into [Plaintiff's] RFC." (Doc.

---

[7]     *But see Tonya S.G. v. Berryhill*, No. CIV. 17-5021-JLV, 2018 WL 4441467, at *6 (D.S.D. Sept. 17, 2018) (rejecting the argument that an error at step two can be harmless); *Stewart v. Astrue*, No. 09-cv-3170, 2011 WL 338794, at *3 (W.D. Mo. Jan. 31, 2011) (citing *Nicola v. Astrue*, 480 F.3d 885, 887 (8th Cir. 2007) for a per se rule of reversal where there is an error at step two); *Lamorte v. Astrue*, No. 3:08-cv-03040, 2009 WL 3698004, at *4 (W.D. Ark. Nov. 2, 2009) (same).

No. 13, Mem. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") 16.) If the physical

limitations from Plaintiff's endometriosis were solely aligned with Plaintiff's other

limitations specific to Plaintiff's chronic pain, then the ALJ did address those functional

limitations, at least in part, when he determined Plaintiff had a reduced RFC to light

work. (*See* Tr. 749.) However, Plaintiff points out that she has suffered from severe

endometriosis for years, undergoing two surgical procedures and requiring doctor visits

on more than ten occasions. (Pl.'s Mem. 16.) It appears that Plaintiff is asserting that in

order for the ALJ's step-two analysis to be harmless, the ALJ would have had to have

considered a limitation based on Plaintiff's absenteeism, which he did not do. Therefore,

the Court cannot dismiss the step-two error—assuming it was an error to not consider

endometriosis—as harmless error because, as explained further below, a remand is

necessary to address Plaintiff's treating therapist's opinion regarding Plaintiff's

absenteeism. Because a remand will thus require full consideration of Plaintiff's

limitations, any step-two error regarding Plaintiff's endometriosis will be corrected at that

time.

## III.    RFC Arguments

The ALJ's RFC determination is "an assessment of what [Plaintiff] can and cannot

do, not what [she] does and does not suffer from." *Mitchell v. Astrue*, 256 F. App'x 770,

772 (6th Cir. 2007); *see also* 20 C.F.R. § 404.1545(a)(1) (stating that a claimant's

"residual functional capacity is the most [she] can still do despite [her] limitations");

*Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (defining RFC as "the most a

claimant can still do despite his or her physical or mental limitations") (quotations

omitted). The ALJ is required to "determine the claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of [her] limitations." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (quotations omitted). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (quotations omitted).

Here, the ALJ determined that Plaintiff's RFC included performing light work with the following limitations:

> [The claimant is] limited to occasional, infrequent, and superficial contacts with the public, coworkers, and supervisors; no work in a job that involves fast pace, such as working at a fast-moving conveyor belt; the individual would need stability in terms of the way the job is performed and the location of the job.

(Tr. 738–39.)

### A. Absenteeism

Plaintiff argues the ALJ erred by failing to make any findings regarding Plaintiff's absenteeism as part of the RFC finding. To qualify for work at any level, the claimant must have the ability to perform the requisite tasks of employment on a daily basis. *Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991) (citing *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)). The claimant must have the ability to find and hold a job in a work environment. *Parsons v. Heckler*, 739 F.2d 1334, 1340 (8th Cir. 1984). If excessive absenteeism is caused by a plaintiff's impairment, a plaintiff is "entitled to have it considered by the vocational expert." *Baker v. Apfel*, 159 F.3d 1140, 1146 (8th Cir.

1998); *see also Youness v. Berryhill*, No. 17-cv-4108 (DSD/BRT), 2018 WL 2716301, at *10 (D. Minn. May 18, 2018) (finding an RFC unreliable when it did not include limitations associated with more than usual off-task time or absenteeism); *Gude v. Berryhill*, No. 2:16-CV-79-SPM, 2018 WL 1470455, at *5 (E.D. Mo. Mar. 26, 2018) ("Because the ALJ failed to make it clear that she considered Dr. Waheed's opinion regarding absenteeism and failed to give good reasons for discounting that opinion, and because the decision not to include Dr. Waheed's opinion on work absences in the RFC potentially affected the outcome of the case, remand for further consideration is required.").

Ms. McEwan, Plaintiff's treating psychologist, is a treating source because she treated Plaintiff for twelve years and the treatment was directed to Plaintiff's medical conditions. 20 C.F.R. § 404.1527(a)(2) ("Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."). The SSA regulations generally give treating physicians' opinions greater weight than non-treating sources. 20 C.F.R. § 404.1527(c)(2); *see Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 553 (8th Cir. 2018). Treating physicians' opinions "receive controlling weight if they are well-supported by the medical evidence and are 'not inconsistent with the other substantial evidence in [the] case record.'" *Walker*, 911 F.3d at 553 (quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)). Regardless of the weight an ALJ assigns an opinion, they "must give good reasons for doing so." *Id.*; *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996) (stating that notice of denial "must contain specific reasons for the

weight given to the treating source's medical opinion"). "Good reasons" for lesser weight

include internal inconsistency and other physicians' opinions offering better medical

evidentiary support. *Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016).

Ms. McEwan opined about Plaintiff having marked limitations in interacting

appropriately with the public, co-workers, and supervisors and marked limitations in

responding appropriately to work pressures and changes when cycling between

depression or mania, and also offered an opinion that Plaintiff would have poor reliability

on a daily basis and poor attendance at a work setting due to multiple medical

appointments. (Tr. 1151.) The ALJ considered Ms. McEwan's opinion as to the stated

marked limitations but did not consider Ms. McEwan's opinion regarding Plaintiff's

projected absenteeism.[8] (*See* Tr. 743.) This is despite Plaintiff's attorney asking several

---

[8]     Defendant argues that a limitation for frequent absenteeism is not required because the ALJ noted that Plaintiff's course of treatment for both her physical and mental impairments was "routine, conservative, and outpatient only" (Tr. 743), and that "nothing in the record indicates that Plaintiff could not arrange her medical appointments around her work schedule and attend appointments over her lunch hour or before or after work." (Doc. No. 16, Def.'s Mem. in Supp. of Mot. for Summ. J. 5.) First, these arguments miss the point, as there is a requirement for the ALJ to address a treating source's opinion, and here the ALJ did not address the opinion about absenteeism. Second, Defendant is wrong that there is nothing in the record indicating that the medical appointments could not be scheduled around work. At the hearing, Plaintiff's attorney pointed out that Plaintiff had been to the doctor about 140 times in the period since her date of onset of disability and asked Plaintiff when she would go to the doctor. Plaintiff confirmed that she would go to these appointments Monday through Friday and during "business hours," stating "[b]ecause that's when they're available." (Tr. 708.) And when Plaintiff's attorney asked the medical expert whether the treatment for Plaintiff at both Ascend Family Institute and ECP Associated Clinical Psychology was related to Plaintiff's severe impairments and was reasonably medically or psychologically necessary, the expert testified that it "[s]eems appropriate and necessary." (Tr. 718.)

questions relating to Plaintiff's absenteeism at the hearing and despite Plaintiff raising the issue again in her post-hearing briefing. The regulations require that the ALJ must give good reasons for rejecting an opinion from a treating source. *See* 20 C.F.R. § 404.1527(c)(2). Therefore, this matter should be remanded for the ALJ to address Ms. McEwan's opinion about Plaintiff's absenteeism and give good reasons for the weight accorded to this treating source's opinion. *See, e.g.*, *Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004) ("Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand."). The ALJ should then reconsider the RFC determination and conclusions at steps four and five.[9]

### B. Post-Hearing Evidence

A few days after Plaintiff's hearing with the ALJ,[10] Plaintiff was in a car accident. (Tr. 1946.) Some of the reports regarding Plaintiff's injuries and follow-up were admitted into the record and then referred to in the ALJ's decision. (*See* Tr. 736, 1946, 1955–56.)

---

[9]    The Court notes that the ALJ on remand should consider that the vocational expert testified that an individual with the RFC as determined by the ALJ would be able to perform the occupation of "mail clerk" and that about one day per month of absenteeism would be allowed for this job. (Tr. 719–20.) The vocational expert also testified that if medical appointments took an individual away from this type of employment once a week, for anywhere from two to four hours, then "[i]t would not be consistent with competitive work." (Tr. 720.)

Also, because the Court remands for further consideration as described above, and additional questioning of a vocational expert may be required after considering Plaintiff's absenteeism, this Court need not address Plaintiff's argument about being prevented from cross-examining the vocational expert.

[10]    The hearing took place on May 25, 2018. (Tr. 698.) The accident occurred on June 6, 2018. (Tr. 1946.)

This included a June 2018 medical source statement from Plaintiff's treating physician Dr. Sethna indicating that Plaintiff was unable to drive and attend to many of her routine activities of daily living. (Tr. 1946.) The ALJ determined that there was "no indication that [Plaintiff's] symptoms are likely to last for 12 months or longer." (Tr. 736.) However, the Appeals Council denied admission of additional records. (Tr. 2 (denying admission of Tr. 13–697).)

Because this Court recommends remanding this case for consideration of Plaintiff's absenteeism and further consideration of Plaintiff's RFC, this Court also recommends that on remand the ALJ consider Plaintiff's treatment records in full— including the additional evidence submitted to the Appeals Counsel—to determine an accurate RFC for Plaintiff. This may include further inquiry into Plaintiff's limitations post-accident, including but not limited to Plaintiff's absenteeism, and may include further requests for evidence if the ALJ finds it is needed.

## RECOMMENDATION

Based on the foregoing, and all the files, records, and submissions herein,

**IT IS HEREBY RECOMMENDED** that:

1.    Plaintiff's Motion for Summary Judgment (Doc. No. 12) be **GRANTED IN PART** and **DENIED IN PART**;

2.    Defendant's Motion for Summary Judgment (Doc. No. 15) be **DENIED**; and

3.      This matter be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four), consistent with this Report and Recommendation.

Date: July 20, 2020                 *s/ Becky R. Thorson*_____
                                       BECKY R. THORSON
                                       United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within fourteen (14) days after being served a copy" of the Report and Recommendation. A party may respond to those objections within fourteen (14) days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).